(112 N. W. 72.)

---

GEORGE SCHLOSSER v. C. S. MOORES.

Opinion filed May 4, 1907.

**Seed Liens — Different Kind of Seed Furnished.**

1. Whether, under the seed lien law of this state, a person furnishing two or more kinds of seed grain to another under one entire contract may perfect a lien which will be effective upon all the crops

produced from the seed thus furnished for the entire purchase price thereof, not determined.

**Same.**

2. Plaintiff, under a verbal contract sold and delivered to S. 200 bushels of seed wheat at 75 cents per bushel and 60 bushels of seed flax at $2 per bushel, and filed one lien statement for the total purchase price, claiming a lien indiscriminately upon the crops produced from such seed for the entire amount due him under the contract, but stating the number of bushels of each kind of grain and the price per pushel. *Held,* that the contract is not entire, but is divisible, and that plaintiff's lien is therefore divisible, and should be construed as two liens; one upon the wheat for the value of the wheat seed furnished, and the other upon the flax for the value of the flax seed furnished.

**Same — Lien Whether Seed is Sown or Not.**

3. Under the seed lien statute of this state (sections 6271, 6272, Rev. Codes 1905), a person who in good faith furnishes seed grain to another is entitled to a lien for the entire purchase price of such seed upon the crop produced therefrom, whether all of such seed is sown or not.

**Same — Directing Verdict — Conversion.**

4. When plaintiff rested his case the trial court directed a verdict in defendant's favor. *Held* error, as plaintiff's proof showed that he had a valid and subsisting lien upon the property described in the complaint, and that defendant had converted the same.

Appeal from District Court, Steele County; *Pollock, J.*

Action by George Schlosser against C. S. Moores. Judgment for defendant, and plaintiff appeals.

Reversed.

*Styles & Koffel,* for appellant.

Appellant has a valid lien on the whole crop of both flax and wheat for the whole contract price of seed for both. 20 Enc. Law (2nd Ed.) 286; Hooven v. Featherstone, 99 Fed. Rep. 180; Dunlop v. Kennedy, 34 Pac. 92; Aurand v. Martin, 58 N. E. 926; Bowman Lumber Co. v. Newton, 33 N. W. 377; Lewis v. Saylors, 35 N. W. 601; Williams v. Judd-Wells Co. et al., 59 N. W. 271; Meixell v. Greist, 40 Pac. 1070; North & South Lum. Co. v. Hegwer, 42 Pac. 388; Mulvane v. Chicago Lbr. Co., 44 Pac. 613; Johnson v. Salter, 72 N. W. 974; Wakefield v. Latey, 57 N. W. 1002.

Also for the whole of the seed furnished, whether sown or not. 20 Enc. Law (2nd Ed.) 347; Central Trust Co. v. Chicago R. Co., 54 Fed. 598; Neilson v. Iowa Eastern R. R. Co., 1 N. W. 434; Lee v. Hoyt, 70 N. W. 95; Hickey v. Collum, 50 N. W. 918; Burns v. Sewell, 51 N. W. 224; Stewart-Chute Co. v. Mo. Pac. Lumber Co., 44 N. W. 47; Weir v. Barnes, 57 N. W. 750; Woolsey v. Bohn, 42 N. W. 1022; Foster v. Dohle, 24 N. W. 208; Irish v. Pheby, 44 N. W. 438; Pomeroy v. White Lake Lbr. Co., 49 N. W. 1131; Bogue v. Guthe, 74 N. W. 588; Lemay v. Johnson, 35 Ark. 225; Knowles v. Sell, 21 Pac. 102.

*C. S. Shippy,* for respondent.

Appellant's lien attached to the crop produced from the particular kind of seed furnished, and not otherwise. This is supported by similar holdings in other classes of liens. Badger Lumber Co. v. Holmes, 62 N. W. 446; Byrd v. Cochran, 58 N. W. 127; Doolittle v. Plenz, 20 N. W. 116.

No valid lien can be acquired for seed furnished which is diverted to other than seeding purposes. Nash v. Brewster, 41 N. W. 105; Wallace v. Palmer, 30 N. W. 445.

FISK, J. Plaintiff, claiming to have a seed lien upon certain wheat described in the complaint, brought this action to recover damages for the alleged conversion thereof by defendant. A verdict was directed in defendant's favor by the trial court, and from an order denying plaintiff's motion for a new trial he appeals to this court, and assigns as error the rulings of the district court in directing such verdict and in denying the motion for a new trial.

The facts are not in dispute, and, briefly stated, are as follows: On or about April 13, 1902, plaintiff, under a verbal contract, sold to one Saunders 200 bushels of seed wheat at 75 cents per bushel and 60 bushels of seed flax at $2 per bushel; such seed grain to be sown on the real property described in the complaint. On or about June 18, 1902, plaintiff filed in the proper office a verified statement for the purpose of perfecting a lien upon the crops produced from such seed, pursuant to the provisions of sections 6271, 6272, Rev. Codes 1905. This statement sets forth the number of bushels and the price per bushel of each kind of seed furnished, and in all other respects complies with the law, except that one lien is claimed for the entire purchase price of both kinds of seed upon the crops indiscriminately. Of the 200 bushels of wheat so furnished Saun-

ders seeded only about 94 bushels, and only about 75 bushels grew and produced a crop. It does not appear how much flax seed was sown. Certain payments were made and applied on the purchase price of this seed grain, leaving a balance unpaid of $98.39. Of the crop of wheat produced by Saunders, defendant received into his elevator and converted about 200 bushels of the value, at the time of the conversion, of about $130. The chief controversy between the parties arises over the construction to be given the so-called "seed lien statute" aforesaid, and the contract under which plaintiff furnished the seed, for the purchase price of which he claims a lien. The statute governing seed liens is as follows:

"Sec. 6271. Any person who shall furnish to another seed to be sown or planted on the lands owned or contracted to be purchased, used, occupied or rented by him, shall upon filing the statement provided for in the next section, have a lien upon all the crops produced from the seed so furnished, to secure the payment of the purchase price thereof.

"Sec. 6272. Any person entitled to a lien under this chapter shall within thirty days after the seed is furnished file in the office of the register of deeds of the county in which the seed is to be sown or planted a statement in writing, verified by oath, showing the kind and quantity of seed, its value, the name of the person to whom furnished, and a description of the land upon which the same is to be or has been planted or sown. Unless the person entitled to the lien shall file such statement within the time aforesaid, he shall be deemed to have waived his right thereto."

No question is raised as to the validity of plaintiff's lien, provided the contract under which the seed was sold is an entire, indivisible contract, and provided, also, that a lien may be perfected under the statute in question upon both kinds of crops indiscriminately to secure the purchase price of all the seed so furnished. The respondent's counsel contends, first, that the lien is invalid for the reason that under the statute, as he construes the same, a lien can be claimed only upon each specific kind of grain for the purchase price of the seed which produced such kind, and hence he argues that it is impossible to acquire a valid lien where two or more kinds of seed are sold under one entire contract; second, that, should it be held that the lien as filed is sufficient under the statute, it is divisible and must be construed as two liens, one upon the wheat for the purchase price of the seed wheat, and the other upon the flax for the purchase

price of the seed flax; and, third, that no valid lien can be acquired for a greater amount than the value of the seed grain actually sown and which actually produced a crop, and, if this be true, he contends that under the undisputed evidence sufficient payments had been made, so as to leave nothing due plaintiff under his lien at the date of the alleged conversion.

The first proposition advanced by respondent's counsel is not free from doubt, and counsel upon both sides concede their inability to find any authorities directly in point. Many cases may be found decided under statutes somewhat similar to the one here involved, such as statutes creating threshers', laborers', landlords', and mechanics' liens; but all, except perhaps the latter kind, are clearly different, in so far as the point here involved is concerned. The case of Mitchell v. Monarch El. Co., 15 N. D. 495, 107 N. W. 1085, involving a thresher's lien, sufficiently illustrates such difference. Under the threshers' lien law, the thresher, upon compliance with the statute, is given a lien upon all the grain threshed by him, and it is unnecessary to state in his lien statement the kinds of grain threshed. Under the seed lien statute, it will be observed that not only the quantity, but the kind, of seed furnished must be stated, together with its value, the name of the person to whom furnished, and a description of the land upon which the same is to be or has been sown. It is argued by respondent's counsel that, because the kind of seed is required to be stated, it was the legislative intent that a lien could be claimed only upon each specific kind of grain for the purchase price of the seed which produced that kind, and he makes a very plausible argument in support of such contention; but we think this too narrow a construction to give this statute. We do not think the legislature had any such object in mind in enacting the second section of such law. This section prescribes what the lien statement shall contain, and we do not believe that the question as to whether an entire, indivisible lien may be acquired on several kinds of grain to secure the purchase price of several kinds of seed sold under one entire and indivisible contract was in the minds of the legislators at all when they enacted this section. Their object in enacting this lien statute, no doubt, was to encourage the sale of seed grain on time and to afford security for the purchase price thereof, not only as against the owner of the crops produced therefrom, but as against creditors of such owner and persons purchasing from him; and therefore it was the legislative intent, in requiring the

vendor of seed grain to set forth in his lien statement the various matters therein required to be stated, to prevent the privilege thus given such vendors from being used as a cover for fraud, as well as to impart notice to the public of the facts therein required to be stated. To this end such person is required to state the kind and amount of grain furnished, its value, etc., and to file such statement in the office of the register of deeds of the county, so that creditors and all persons dealing with the owner of the crop produced from the seed may have knowledge of the contract between the parties and the extent of the rights claimed under such lien by the vendor of the seed so furnished. Kelly v. Seely, 7 N. W. 821, 27 Minn. 385; Aurand v. Martin, 188 Ill. 119, 58 N. E. 926.

If we are correct in this, then the provisions contained in the second section furnish no light upon the point here involved. Neither does the other section furnish any light upon the question. It merely gives a lien upon all the crop produced from the seed so furnished. It apparently was not contemplated that several kinds of seed might be furnished under one contract, yet this may frequently be done; and in such a case, if the contract is entire and indivisible, the vendor of the seed, unless given a lien indiscriminately upon all the crops produced from the seed thus furnished, would be deprived of the statutory lien. Whether or not such result would follow it is unnecessary for us to determine in this case, as we hold that the contract in question is not entire, but is divisible, and should be construed as two contracts—one for the wheat, and one for the flax. We therefore refrain from expressing any opinion upon respondent's first proposition. However, upon this interesting question we call attention to some of the authorities decided under mechanic's lien statutes which are analogous to the statute in question (Lavin v. Bradley, 1 N. D. 297, 47 N. W. 384), and wherein it is held that a person who furnishes material for the construction of several distinct buildings upon separate and distinct lots or tracts under one entire contract may have a lien upon all the buildings and lots or tracts for the entire amount of such material. These decisions are based upon the proposition that, the contract being entire, the lien, which is a mere incident, is also entire. In other words, the contract of the parties determines the status of the security in so far as its divisibility or indivisibility is concerned. Fullerton v. Leonard, 3 S. D. 118, 52 N. W. 325; Willamette Mills Co. v. Shea, 24 Or. 40, 32 Pac. 759; 20 Am. & Eng. Enc. (2d Ed.)

286, and numerous cases cited; Boisot on Mech. Liens, section 173, and cases cited. See, also, note to Wilcox v. Woodruff, 17 L. R. A. 315, 61 Conn. 578, 24 Atl. 521, 1056, 29 Am. St. Rep. 222; Phillips v. Gilbert, 101 U. S. 721, 25 L. Ed. 833; Sergeant v. Denby, 12 S. E. 402, 87 Va. 206; Phillips Mech. Liens, section 369.

But we agree with respondent's counsel that the contract under which the seed was sold is divisible, and should be construed as two liens—once upon the wheat for the value of the seed wheat furnished, and the other upon the flax for the value of the seed flax furnished; hence the plaintiff cannot claim a lien upon the wheat crop for more than the purchase price of the seed wheat furnished, with interest. The contract stipulated the number of bushels and price per bushel of each kind of seed furnished, and the fact that the total purchase price is stated will not in our opinion make the contract entire and indivisible. Nichols & Shepard Co. v. Charlebois, 10 N. D. 446, 88 N. W. 80 and authorities cited. As stated in Katz v. Bedford, 1 L. R. A. 826, 19 Pac. 523, 77 Cal. 319: "Whether a contract is entire or severable depends, in general, upon the consideration to be paid, not upon its subject. If the consideration is single, the contract is entire; but, if the consideration is expressly or by necessary implication apportioned, the contract is severable." See, also, 7 Am. & Eng. Enc. L. (2d Ed.) 95-97; Pierson et al. v. Crooks et al., 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831; Keeler v. Clifford, 165 Ill. 544, 46 N. E. 248; Miner v. Bradley, 22 Pick. (Mass.) 457; Young, etc., Co. v. Wakefield, 121 Mass. 91; Wooten v. Walters, 110 N. C. 251, 14 S. E. 734, 736; Johnson v. Johnson, 3 B. & P. 162; Higham v. Harris, 108 Ind. 246, 8 N. E. 255. The foregoing authorities all support the rule that when different articles are bought at the same time for distinct prices, although they are articles of the same general description, the contract is not entire, but is, in effect, a separate contract for each article sold. Pierson et al. v. Crooks et al., supra, involved a contract for the sale of two descriptions of iron, hoops, and sheets, the quantity, quality, and price of each being specified, and Andrews, J., said: "The point that the contract was entire and indivisible, and that the plaintiffs could not accept the sheets and reject the hoops, is based upon the general rule of law that where a contract is entire, though it may embrace the performance of several things, if one of the parties professes to deny its obligation upon him, or to rescind it on the ground that the other party has failed to perform its obligation on his part, he must renounce or rescind it in toto.

There was, indeed, one contract, in the sense that there was but one instrument embracing both descriptions of iron; but the two kinds of iron were distinct in character, and the prices were different and specific for each kind. There is nothing upon the face of the contract or in the evidence to indicate that the price of one kind was fixed with reference to the price of the other, or that the acceptance of both kinds was a consideration for the undertaking by the defendant to deliver iron of either kind.     *    *    *    Whether the contract was entire in the sense claimed depends upon the intention. We think, under the circumstances, it was properly held to be divisible." In Johnson v. Johnson, supra, two parcels of real estate were purchased by plaintiff at the same time and he took one conveyance for both. One was purchased for £700, and one for £300. The title to one was invalid, and plaintiff brought the action to recover back the consideration paid for it. He was allowed to recover. Lord Alvanley, in giving judgment, said: "My difficulty has been how far the agreement is to be considered as one contract, for the purchase of both sets of premises, and how far the party can recover so much as he has paid by way of consideration for the part of which the title has failed, and retain the other part of the bargain.    *    *    *    Although both pieces of ground were bargained for at the same time, we must consider the bargain as consisting of two distinct contracts, and that the one part was sold for £300, and the other for £700."

The cases relied upon by appellant's counsel, in which it is held that the contracts are entire, and hence that a lien may be claimed upon several buildings for the entire cost of erecting all, will be found upon examination to involve contracts in which the quantity and value of the material for each building was not separately stated, but one gross sum was agreed upon as the consideration for all. Hence these authorities are not in point upon the question here involved. Had the contract in the case at bar merely stated the gross purchase price, instead of mentioning the price of each kind of grain, an entirely different case would have been presented.

Counsel for respondent next contends that plaintiff is only entitled to a lien for the price of the seed grain which was actually sown and which actually produced the crop. This contention must be overruled. We think it clear, under the statute in question, that a person who furnishes seed grain to another to be sown upon certain land is entitled, upon compliance with the statute, to a lien for the

purchase price of all seed so furnished upon the crop grown from such seed or any portion of such seed. In other words, it is not incumbent upon the vendor of the seed to see to it at his peril that all such seed is actually sown as agreed. As before stated, our seed lien law is analogous to mechanic's lien statutes, and the authorities are numerous under the latter statutes holding that the material man is not required at his peril to see that all the material is actually used in the building, and, whether it is actually used therein or not, he is entitled to a lien for the materials furnished. 20 Am. & Eng. Enc. L. (2d Ed.) 347, and cases cited.

At the close of plaintiff's testimony, the trial court, on motion of defendant's counsel, directed a verdict in defendant's favor. The plaintiff's proof showed that he held a lien upon the wheat mentioned in the complaint for a balance due him on the purchase price of the seed wheat furnished. It also showed that the defendant received into his elevator about 200 bushels thereof, worth a sum in excess of the balance due on plaintiff's lien, and converted the same to his own use; hence plaintiff was entitled to recover, under his showing, damages to the extent of such balance due him for the seed wheat furnished, and it was error for the trial court to direct a verdict.

The order appealed from is accordingly reversed, and a new trial ordered. All concur.