### KNOTTS v. CLARK CONST. CO.

(Circuit Court of Appeals, Seventh Circuit. November 9, 1917. On Petition for Rehearing, January 2, 1918.)

No. 2358.

1. CONTRACTS ⟨⟩313(2)—BUILDING CONTRACT—ACTION FOR BREACH—RENUNCIATION BY OWNER.

The refusal of the owner to pay a building contractor on the monthly estimate of the architect as required by the contract, and his subsequent action in preventing the architect from giving further certificates, amounted to a renunciation of the contract, which justified its abandonment by the contractor and entitled him to recover damages for its breach.

2. DAMAGES ⟨⟩124(3)—MEASURE—BREACH OF BUILDING CONTRACT BY OWNER.

Where a building contractor was prevented from completing performance of the contract by the refusal of the owner to make agreed monthly payments as the work progressed, and the contract was single, specifying no fixed amounts for specific materials or labor, but only the price for the entire job, the minimum measure of damages for its breach is the outlay reasonably incurred by the contractor in the course of its due performance, and this is recoverable, without regard to whether or not there would have been a profit on full performance.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by the Clark Construction Company against Armanis F. Knotts. Judgment for plaintiff and defendant brings error. Affirmed.

W. J. Whinery, of Hammond, Ind., for plaintiff in error.
Sidney Stein, of Chicago, Ill., for defendant in error.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. While several counts were filed in this action, counsel agree that, the common counts and another count on the contract having been expressly abandoned, the trial proceeded on the amended first additional count. In this count plaintiff alleged the execution of a written contract to furnish the material and labor

for the construction of certain store and office buildings in Gary, Ind., to be completed by April 15, 1907, in accordance with plans and specifications made a part of the contract, for the consideration of $56,500, payable in monthly installments as the work progressed, with a right on the part of the defendant to retain 15 per cent. to secure the performance; payments to be made on the architect's certificate. It further averred waiver of the time requirement for completion; the issuance of an architect's certificate for $2,500 in April; the refusal of payment thereof; the demand for additional certificates in May, June, and July; defendant's direction to the architect to refuse them and his consequent refusal; the performance of work and delivery of material both before and after the delivery of the architect's certificate for $2,500; defendant's refusal to pay either the one certificate or any sum for the work performed and material furnished pursuant to the contract and amounting to over $13,000; plaintiff's abandonment of the work because of defendant's refusal to pay and the arbitrary and fraudulent act of the architect in the refusal of certificates; the sale by plaintiff of material on hand for $1,200, with a loss of $5,000; and defendant's further failure to pay any part of the moneys to plaintiff's damage in the sum of $25,000. The conflicting evidence was resolved by the jury in favor of the plaintiff. It found against the defendant on his claim of set-off, and returned a verdict of $10,000 in favor of the plaintiff. To reverse the judgment rendered thereon, defendant sued out a writ of error.

[1] 1. The cause of action as alleged in this count is for recovery of the sums expended under and pursuant to the contract as the damages alleged to have been sustained by reason of defendant's breach. This breach is alleged to have consisted in the refusal to pay the architect's certificate, and in the further refusal to pay for the work monthly as it progressed; the securing of an architect's certificate, condition precedent to the obligation so to pay, having, under the allegations, been waived by reason of the fraudulent and arbitrary action of the architect in refusing to give the certificate because of defendant's alleged direction to him so to act.

. While the count does not state that the moneys so expended were the reasonable outlays of the plaintiff in the performance of the contract, the omission of this allegation could not be taken advantage of on motion in arrest of judgment or on writ of error. Any defect in this respect was cured by the verdict. The declaration furthermore states sufficient grounds for plaintiff's abandonment of the contract. Persistent refusal to pay installments due under a building contract, under the circumstances alleged in this declaration, amount to a renunciation on the part of the owner and justified abandonment of further performance; for obstruction to performance need not be physical. Actions such as those alleged are just as effective in absolving the other party from any further readiness or offer to perform as a condition to the enforcement of the liability to answer for the damages sustained by reason of the breach. Phillips & Colby Construction Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Dobbins v. Higgins, 78 Ill. 440; Keeler v. Clifford, 165 Ill. 544, 46 N. E. 248; National Tool Co. v. Standard Shoe Machinery Co., 181 Mass. 275, 63 N. E. 900.

For reasons more fully stated in considering the measure of damages, the declaration in our judgment states a good cause of action.

[2] 2. The vital question in this case is that of the measure of damages. Defendant contends, as stated by counsel in his supplementary brief:

"The claim in the case at bar is limited to compensation for the work actually done in an effort to carry out the contract. This work can only be measured by the contract price, and any other value regarding it is wholly immaterial. The contract provides no special price covering the alleged work and material furnished under the contract in the case at bar. Therefore its value could only be determined from evidence showing what work and material had been furnished, and what it would cost to complete the building; in other words, evidence from which the value of the labor and material done and furnished could be determined, as based upon the contract price."

The parties are agreed that the contract is single. While payments were to be made monthly as the work progressed, the contract itself furnished no basis for the separate items entering into the work. We need not, therefore, consider what the true measure of damages would be after such a breach, if the contract were divisible, or if a schedule of prices to be paid for each article forming part of the subject-matter were specified in the contract itself. But defendant's deduction, that in a contract such as this plaintiff can recover only the profit, if any, that he has been prevented from earning by reason of the breach, is contrary both to principle and to authority.

A substantial breach during the progress of the work justifying the abandonment by the other party gives rise either to an action for the damages sustained through the breach or to a quantum meruit. If the latter form be pursued, the measure of damages is the fair value of the work and labor performed and the materials furnished, with a conflict in the authorities as to whether or not schedule prices when specified in the contract should limit the recovery. But if a plaintiff not in default—and one who is justified in abandoning further work is not thereby in default—sues for the breach of the contract, he may, at his option, specify and claim as his damages either the profit which he has thus been prevented from earning or his actual outlays reasonably made in the performance of the contract plus the profits, if any, which he would have made if he had not been prevented from continuing to perform the contract.

It may well be that ordinarily there is no, or no substantial, difference in the result, because, ordinarily, an owner does not prevent further performance of a contract the carrying out of which would be unprofitable to the contractor. It may, however, happen, as defendant in the instant case claims, that such prevention is to the contractor's benefit, that if he had been permitted to carry out his contract his loss on the whole job would have equaled or exceeded the outlays made up to the time of the owner's breach, so that, if the sole specification of damages were the loss of profits, and the proof established no such loss, but, on the contrary, a gain, the plaintiff would get only nominal damages.

If, however, plaintiff specifies as his damages the outlays actually and reasonably incurred either with or, as in the instant case, without

a further claim for loss of prospective profits, he will not be deprived of reimbursement for these reasonable outlays because he does not prove the profit, or because defendant could establish that, if he had been permitted to finish the work, the net result would have been a loss equal to or greater than the outlays. This principle is clearly enunciated in United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168, and the same result is reached in Lodder v. Slowey, 1904, A. C. 442, affirming 20 New Zealand L. R. 321, and Philadelphia v. Tripple, 230 Pa. 480, 79 Atl. 703. See Doolittle v. McCullough, 12 Ohio St. 360. See, however, Wellston Coal Co. v. Franklin Paper Co., 57 Ohio St. 182, 48 N. E. 888, and Kehoe v. Mayor of Rutherford, 56 N. J. Law, 23, 27 Atl. 912.

3. While the evidence was conflicting, clearly there was sufficient to sustain the averments of the declaration. We deem it unnecessary to consider in detail the numerous assignments of error. While some evidence may have been improperly admitted, the error resulting therefrom was, in our judgment, entirely harmless. The testimony of the statements of the architect as to the statements made to him by the owner, while not admissible as evidence that the owner made the statements, were nevertheless admissible as statements of the reason that governed the architect's wrongful action.

Judgment affirmed.

## On Petition for Rehearing.

PER CURIAM. In the petition for rehearing, it is again strongly urged that at best only the proportionate value of work done, in its relation to the entire work and on the basis of the entire contract price, can be recovered. To give the contractor his outlays reasonably incurred, might, it is urged, enable him in some cases to recover more than the entire contract price for an incomplete job.

As to whether or not the contract price is the maximum that in any event could be recovered, we express no opinion, because the facts in the case before us require none; and for the same reason, we express no opinion as to the proper measure of damages if a contract specifies fixed amounts for specific materials or labor, or provides for definite payments at successive times or stages of the work, deemed by the parties, either expressly or impliedly, as full compensation for so much as shall then have been completed, nor where, as is not here the case, the work has so far progressed that it is practicable to determine with reasonable definiteness what proportion of the entire work contracted for remains undone. Here the price of $56,500 was for the entire job; payments were to be made as the work progressed, but the contract fixes no basis for the amounts to be paid. After the foundation had been laid and considerable material delivered, defendant wrongfully stopped further work. We held that under these circumstances, the minimum measure of damages, whatever the form of action, is the outlay reasonably incurred in the course of due performance of the obligation.

The petition for rehearing is denied.