JEANETTE W. LOSIE, Appellant, *v.* ROYAL INDEMNITY COMPANY, Respondent.

Third Department, July 1, 1918.

Insurance — when elevator maintained in a garage not a passenger elevator within the meaning of an insurance policy providing for double indemnity for injuries sustained while riding in a passenger elevator — evidence — owner of elevator not common carrier.

Where a garage company maintained an elevator extending from the basement floor to the third story of its garage for the purpose of taking automobiles and other heavy articles to the upper story, and at the

entrance on each floor posted a conspicuous notice that the elevator was to be " used only for automobiles and freight," but it appeared that patrons of the garage were accustomed to pass up and down both by the elevator and by a stairway, said elevator is not a passenger elevator within the meaning of an insurance policy providing that if the injury to the insured be sustained while riding as a passenger in a passenger elevator, the benefit shall be doubled.

The mere fact that at times more or less frequent, passengers were permitted to ride upon the elevator did not, of itself, between the insurer and the insured, constitute the elevator a passenger elevator nor estop the insurer from claiming that it was a freight elevator.

In an action by the insured who had driven his automobile into the garage and upon the elevator and had been hoisted, seated in his car, to the second floor and was injured while riding down in the elevator with a garage attendant who had acceded to his request that he ride down with him, the court properly instructed the jury " If you find that the elevator was, in its regular and ordinary use, commonly used for the conveyance of passengers, you may, under the evidence that has been given here, determine that it was a passenger elevator."

While the insured entered upon the elevator with the consent of an employee of the garage company, such employee was not the agent of the defendant, and his action cannot waive any of the provisions of the policy.

In this State the owner of an elevator is not a common carrier.

APPEAL by the plaintiff, Jeanette W. Losie, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 20th day of February, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying the plaintiff's motion to set aside the verdict and for a new trial.

*Thomas M. Losie,* for the appellant.

*Frank J. O'Neil* [*E. W. Personius* of counsel], for the respondent.

LYON, J.:

The question at issue upon the trial was whether the plaintiff was entitled to recover single or double indemnity upon a policy of accident insurance. The policy provided that if the injury to the insured be sustained while riding as a passenger in a passenger elevator, the benefit should be doubled. The insured, Arthur T. Losie, was injured in April,

1916, while getting off an elevator in a building occupied by the La France Garage Company in the city of Elmira, N. Y. He had driven his automobile into the garage and upon the elevator, and had been hoisted, seated in his car, to the second floor, after which he had backed his car off the elevator into the space which he had rented for its storage. The garage attendant having acceded to the request of the insured that he ride down with him, the two stepped upon the elevator. When within about four feet of the first floor, the insured stepped off the front of the elevator and fell, and one of his feet slipped through the open space at the bottom of the gate and thence underneath the descending elevator where it was partially crushed. The death of the insured resulted from the injury two weeks later.

The court admitted evidence showing the uses to which the elevator had been put, and its manner of construction, and submitted the question to the jury whether under all the facts proven the elevator was a passenger elevator within the minds of the parties to the contract. The jury found that the elevator was not a passenger elevator and rendered a verdict for the face amount only of the policy. The plaintiff, claiming that the evidence established the elevator to be a passenger elevator, and hence that as beneficiary she was entitled to recover double the face amount of the policy, has taken this appeal. The single question, therefore, presented to this court is whether the finding of the jury that the elevator was not a passenger elevator was contrary to law and against the weight of evidence as contended by the appellant.

The building of the La France Garage Company was a three-story structure with basement occupied wholly by that company. It was of concrete, situated on a street corner and about sixty-five by one hundred and twenty feet in size. On the first floor were the cashier's office, the salesroom for new cars, the wash room, and stalls for car storage. On the second floor were an office, the salesroom for used cars, the vulcanizing room, and stalls for car storage. On the third floor were the machine shop and general repair room. The basement was used as a storage room for cars, and for accessories pertaining to the business of the company. The elevator extended

from the basement floor to the third story. It was eight or ten feet wide and twenty feet deep. The sides and rear end were covered by a picket fence about six feet high. The elevator front was entirely open. It was the only elevator in the building and furnished the only means for taking automobiles and other heavy articles into the basement and upper stories. A stairway about four feet in width, provided with a handrail, ran from the basement to the third story. A separate stairway extended from the office on the first floor to just outside the office on the second floor. On the right-hand side of the entrance to the elevator on each floor was posted a conspicuous notice as follows: " WARNING! This elevator is used ONLY for Automobiles and Freight. Only employees having charge taking Autos and Freight up or down shall ride on same. No one, without written authority from us is allowed to operate same. La France Garage Co. By the President."

Patrons of the garage were accustomed to pass up and down the various floors both by the elevator and by the stairways. To just what extent the elevator was used for this purpose was the subject of conflicting testimony. One of the patrons called by the plaintiff testified that he rode up or down on the elevator as he wished; that sometimes he would walk down and sometimes he would ride down; that if he was going down and the elevator was too, he rode and that if not he supposed he walked, and others did the same, and that the elevator was also being used right along for carrying automobiles. One of the proprietors of the garage testified that there was a verbal rule that persons must not be carried on the elevator. He also testified that the elevator was used in connection with the different departments of the business, primarily for carrying automobiles, " and the driver in the car oftentimes used it — if a customer wanted to ride, why there was no physical force, of course, to keep him off." The elevator was capable of hoisting 6,600 pounds and had a lifting speed of twenty feet per minute. The evidence seems to indicate that both the elevator and stairways were used by persons according to their inclination or convenience in going between the various floors.

The appellant contends that the use to which the elevator

was put alone determines as matter of law whether it was a passenger or a freight elevator, and that the plaintiff having shown that the elevator was commonly used for transporting persons, it must be held to have been a passenger elevator. Under the construction that the use alone fixes the character of the elevator, the use of the most rudely and dangerously constructed hoist, without protection of any kind, and designed to carry sand and gravel or the roughest sort of building material, might if frequently used by persons, even wholly without the knowledge of the insurer, bind it to liability for accidental injury as being a passenger elevator. Plainly the manner of construction of the elevator was also, as the respondent claims, an important factor in determining the character of the elevator. The open front of this elevator was a necessary feature of its construction in order that automobiles might be run on and off unobstructed. Otherwise it could not properly perform its function in a garage of this character.

The general manner of construction and operation of both freight and passenger elevators may be said to be a matter of common knowledge. Concededly, the passenger elevator with its inclosed cage, and door for entrance and exit kept closed while the car is in motion, furnishes a far safer means of transportation than an elevator with its front open and wholly unprotected. The latter condition doubtless accounts in a large measure for the injury of the insured. Descending in the late afternoon, wearing bi-focal glasses, the top of the gate guarding the elevator well appeared to him as he said to be the floor, and stepping off before the attendant who tried to stop him could reach him, he sustained the injury which resulted in his death. The defendant expressly limited its liability for double indemnity on account of injuries occurring in an elevator to those sustained by the insured while riding in a passenger elevator, and the deceased must be assumed to have had full knowledge of such condition and to have accepted the policy with such knowledge. The parties are deemed to have contracted with reference to common knowledge as to the difference between freight and passenger elevators. The fact that the garage company at times permitted persons to ride on the elevator did not necessarily change the character

of a freight into a passenger elevator, nor estop the insurer from claiming that it was a freight elevator. Were the litigation between the plaintiff and the garage company and involving the relative rights and relations of the parties to each other, a different question might be presented. The plaintiff certainly has no right to complain of the following instruction by the court to the jury: " If you find that the elevator was, in its regular and ordinary use, commonly used for the conveyance of passengers, you may, under the evidence that has been given here, determine that it was a passenger elevator." This charge was certainly as favorable to the plaintiff as she could have asked. This instruction permitted the jury to find that it was a passenger elevator notwithstanding its partial and indispensable use as a freight elevator.

Undoubtedly the term " passenger elevator " is to be construed in its customary and popular sense. It cannot be doubted that a person assumes a greater risk in riding upon a freight than upon a passenger elevator. While deceased entered upon the car with the consent of an employee of the garage company, such employee was not the agent of the defendant, and his action could not waive any of the provisions of the policy. The gate at the first floor was counterbalanced with weights and was raised and lowered like a window sash. Its evident purpose was simply to protect persons from running into the elevator well during the time the elevator was not at the first floor. Not only the use of the elevator but the sign characterized it as a freight elevator. The policy is to be construed according to the plain and ordinary meaning of the terms which the parties have employed. (*Houlihan* v. *Preferred Accident Ins. Co.*, 196 N. Y. 337.)

The appellant has quoted freely from the opinion in the case of *Wilmarth* v. *Pacific Mutual Life Insurance Co.* (168 Cal. 536), in which it was held that a provision in an accident insurance policy for double indemnity in case the insured was injured " while in a passenger elevator," has reference not only to elevators used exclusively for passengers, but also to elevators customarily used for conveying passengers, though also used for carrying freight and not specially equipped with safety- appliances. The facts there were very different from those in the case at bar. In that case the insured,

intending to go to the third floor of the building, got off the moving elevator at the second floor, apparently through mistake, and falling down the elevator shaft was killed. The third floor of the building was not being used by its occupants for the purposes of their business but had been used about a week previously for a ball to which persons attending had been conveyed in large numbers by this elevator. On the occasion of Wilmarth's death, the third floor was being reserved for a fair to be given, and which was given, at a time commencing two days after the accident. Wilmarth was the secretary of the association giving the fair, and had gone upon the elevator for the purpose of being conveyed to this floor, doubtless concerning matters relating to the fair. It is to be observed also that the court in its opinion refers to the fact that the courts of California have long been committed to the doctrine that the responsibility of the owner of an elevator is analogous to that of a common carrier. (*Treadwell* v. *Whittier*, 80 Cal. 576.)

The courts of our State, to the contrary, hold that the owner of an elevator is not a common carrier. (*Griffen* v. *Manice*, 166 N. Y. 188; *Rumetsch* v. *Wanamaker, New York, Inc.*, 216 id. 384; *Stump* v. *Burns*, 219 id. 309.) Had the upper floor of the building of the La France Garage Company been occupied by tenants or given over to some entertainment or business other than that of the garage company and the elevator been commonly used for the purpose of carrying persons to and from such floor in connection with such other business, the *Wilmarth* case would be more in point. It is also to be observed that in the *Wilmarth* case the trial court submitted to the jury the question as to the conveyance being a passenger elevator and the jury answered the question in the affirmative, while in the case at bar the jury answered the question in the negative.

The mere fact that at times more or less frequent passengers were permitted to ride upon the elevator did not of itself between the insurer and the insured constitute the elevator a passenger elevator. The provision of the policy referred to should be given a reasonable construction. The question as to whether the elevator was a passenger elevator was submitted in a clear and comprehensive charge of which the

plaintiff has no right to complain, and the verdict is fully warranted by the evidence. There being no exceptions calling for reversal, the judgment and order appealed from should be affirmed.

Judgment and order unanimously affirmed, with costs.